UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DERRICK DONALD GREEN,

    Petitioner,

v.                                            Case No. 2:12-CV-441
                                              HON. GORDON J. QUIST

JEFF WOODS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Derrick Donald Green filed this petition for writ of habeas corpus, challenging his jury conviction for first degree murder, possession of a firearm by a person convicted of a felony, and possession of a firearm during the commission of a felony. Petitioner was sentenced as a second habitual offender to life in prison for his murder conviction; five to seven and one half years in prison for his felon in possession conviction; and two years in prison for his felony firearm conviction. The Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

        Petitioner alleges:

        I. That he was denied the effective assistance of counsel;

        II. That the verdict was against the great weight of the evidence;

        III. Prosecutorial misconduct; and

        IV. That the trial court misapplied the law regarding marital communications/ spousal privilege.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state

adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412.  Rather, the application must also be "unreasonable." *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998).  The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.  This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that he received ineffective assistance of counsel.  Petitioner argues that his counsel failed to object and assert a spousal privilege to Petitioner's wife's testimony at the preliminary examination and further failed to appeal the district court's allowance of this testimony.  Petitioner claims that his counsel failed to object to the use of Petitioner's prior conviction of his attempt to carry a concealed weapon to challenge Petitioner's credibility.  Finally, Petitioner asserts that counsel failed to present a substantial defense.

The Michigan Court of Appeals found that the marital communications privilege contained in Mich. Comp. Laws § 600.2162(2) and (7) provides for a privilege held by the testifying spouse not to be examined in a criminal proceeding without consent. The privilege in this case, was Petitioner's spouse's to assert, and not Petitioner's privilege. Petitioner agrees that only his spouse could assert the privilege, but argues that his counsel erred by not making her aware of that before she testified. In rejecting this claim, the court explained:

> Were we to agree that defense counsel's failure to raise the privilege earlier in the proceeding was somehow erroneous, defendant cannot show that he was denied a fair trial. "Although longstanding in the law, the spousal privilege has no constitutional foundation." *People v Wadkins*, 101 Mich App 272, 283; 300 NW2d 542 (1980). Thus, if the admission of Ms. Green's testimony violated the spousal privilege statute, the admission was "not 'illegal' as an infringement of a basic constitutional right or as unreliable evidence which would deny defendant a fair trial." *People v Armentero*, 148 Mich App 120, 129; 384 NW2d 98 (1986). Were we to agree that defense counsel's failure to raise the privilege earlier in the proceeding was somehow erroneous, defendant cannot show that he was denied a fair trial. "Although longstanding in the law, the spousal privilege has no constitutional foundation." *People v Wadkins*, 101 Mich App 272, 283; 300 NW2d 542 (1980). Thus, if the admission of Ms. Green's testimony violated the spousal privilege statute, the admission was "not 'illegal' as an infringement of a basic constitutional right or as unreliable evidence which would deny defendant a fair trial." *People v Armentero*, 148 Mich App 120, 129; 384 NW2d 98 (1986).
>
> Furthermore, defendant cannot show prejudice because, even without Ms. Green's testimony, the prosecution presented overwhelming evidence of defendant's guilt. Defendant's stepdaughter, Antoinette Mitchell, testified about defendant's strained relationship with the victim, Raymond Lewis, stemming from Mr. Lewis's relationship with defendant's daughter, Tiffani Green. Ms. Mitchell further testified that, on the day of the crime, defendant and Mr. Lewis had a heated argument in front of defendant's house. Mr. Lewis walked away and, a short time later, defendant left the house in a white truck he used for work at a cable company. Ms. Mitchell tried to call Mr. Lewis to warn him that defendant had left the house and, a short time later, Ms. Mitchell learned that Mr. Lewis had been shot. Ms. Mitchell also testified that defendant owned a "long gun." Tiffani

> Green testified that defendant was unhappy about her relationship with Mr. Lewis. Shortly before the shooting, she saw defendant drive away in his work truck in the direction Mr. Lewis had headed on foot.
>
> Other evidence showed that, after the shooting, defendant did not pick up his last two paychecks from work, and defendant admitted that he never returned home after the shooting. Detroit Police Sergeant Joe Wright testified that he saw a black male shoot Mr. Lewis in the head with a long gun, and then drive away in a white truck matching the description of defendant's work truck. Another witness, Gerald Day, also described a white cable truck fleeing the scene. Officer Donald Rem, the evidence technician, found a live shotgun shell 18 feet from defendant's garage, in the alley. Similar shotgun shells were recovered in defendant's bedroom. Although one bullet recovered by the evidence technicians was of the sort that typically came from a handgun, a second wound was caused by a lead-fired shotgun slug. The technician also recovered several other components of a fired shotgun shell. The medical examiner subsequently recovered shotgun shell material from Mr. Lewis's body. Thus, even without Tanya Green's testimony, overwhelming evidence established defendant's guilt, and any error in admitting her testimony was not outcome determinative. Therefore, defendant cannot show he was prejudiced by any error of defense counsel.

Michigan Court of Appeals decision, docket #27 at 2-3.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions

- 5 -

were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

In the opinion of the undersigned, Petitioner cannot show that his counsel erred in failing to inform Petitioner's spouse that she could assert a marital privilege and refuse to testify against Petitioner. First, there exists no evidence to establish that the privilege would have been asserted. Second, even without Ms. Green's testimony, the evidence was sufficient to establish his guilt. Consequently, Petitioner cannot show prejudice. Further, contrary to Petitioner's argument, the trial court did not err in admitting this testimony into evidence. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Similarly, Petitioner has asserted that his counsel erred in not objecting to jury instructions regarding the use of his prior felony conviction for attempted carrying of a concealed weapon. The Michigan Court of Appeals stated:

> Defendant claims that trial counsel was ineffective for failing to object when the trial court gave a cautionary instruction that the jury could consider defendant's prior felony conviction for attempted carrying a concealed weapon "in deciding whether you believe the defendant is a truthful witness." According to defendant, this undermined the credibility of his own testimony, which was crucial because he denied any involvement in Mr. Lewis's death. The parties stipulated, and the jury was informed, that defendant was convicted

of an unspecified felony and was ineligible to carry a firearm. The trial court instructed the jury as follows:

> There is evidence that the defendant has been convicted of a crime in the past. You may consider this evidence only in deciding whether you believe the defendant is a truthful witness. You may not use it for any other purpose. A past conviction is not evidence the defendant committed the alleged crime in this case.

Pursuant to MRE 609(a)(1), a witness may be impeached by evidence of a felony conviction, but the crime must contain "an element of dishonesty or false statement," or, under MRE 609(a)(2)(A), a defendant may be impeached by evidence of a conviction for a crime that contains "an element of theft." Defendant's prior crime did not involve an element of dishonesty or theft and the parties agree that the trial court's instruction was erroneous. Defense counsel did not object to the trial court's instructions, but defendant is not entitled to relief because any alleged error was not outcome determinative. With respect to a violation of MRE 609, even if the trial court committed error in admitting the prior convictions, any error is harmless and does not require reversal if the defendant cannot demonstrate prejudice. *People v Ortiz*, 249 Mich App 297, 312; 642 NW2d 417 (2001). Further, there was substantial evidence establishing defendant's guilt independent of the error. *Id*. We also note that, although the court did not mention the nature of the offense at issue, defendant, in fact, provided several unsolicited details (including the fact that he was also carrying a knife) in his testimony regarding the circumstances of the previous offense. Furthermore, regarding the issue of defendant's credibility, we observe that defendant's testimony conflicted with that of his only other witness. Therefore, characterizing defendant's prior conviction as impeachment evidence rather than mere evidence that defendant was ineligible to carry a firearm was not prejudicial.

Michigan Court of Appeals decision, docket #27 at 5. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that the verdict was against the great weight of the evidence. However, Petitioner merely states that this case involves the marital communications privilege which applies to communications between spouses. Petitioner does not actually explain the details of his claim that the verdict was against the great weight of the evidence. Moreover, such a claim is not applicable in a habeas proceeding. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A habeas petition must "state facts that point to a 'real possibility of constitutional error.' " *Blackledge v. Allison*, 431 U.S. 63, 75 (1977). Therefore, Petitioner's state-law claim is not a basis for habeas relief. Furthermore, the Supreme Court has never recognized a prisoner's constitutional right to a new trial because the verdict was against the great weight of the evidence. In addition, as previously explained, Petitioner's marital privilege claim was found to be without merit under state law; and, the Michigan Court of Appeals found that even without the testimony of Petitioner's former spouse, the evidence against Petitioner was significant to support his conviction. Petitioner's argument concerning the weight of the evidence therefore fails to raise a meritorious federal claim.

Petitioner claims that the prosecutor committed misconduct by eliciting irrelevant and misleading testimony. The Michigan Court of Appeals rejected these claims explaining:

> Defendant argues in his Standard 4 brief that he is entitled to a new trial because he alleges that the prosecutor elicited inflammatory and prejudicial testimony. "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court considers issues of prosecutorial misconduct "on a case-by-case basis . . . ." *Thomas*, 260 Mich App at 454. Curative instructions, however, "are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Defendant bases his argument on the

follow exchange between the prosecutor and Detroit Police Lieutenant Charles Flanagan:

*Q.* And while you're already at the Carlisle address, some information comes out about a possible stolen vehicle, is that right? . . . . Information about what comes out?

*A.* Dispatch run on a stolen car came out while I was engaged in a conversation with [Tanya].

*Q.* Are you familiar with Officer Cross-Nelson?

*A.* Yes.

*Q.* And did you see him at the 15417 Carlisle address?

*A.* Yes.

*Q.* At any point in time, did you ever see him on a cell phone?

*A.* Yes, I directed him to try to lure the suspect back to the scene so we could take his *false* police report. [Emphasis added.]

Defense counsel objected to the testimony and the court responded, "Sustained. Also stricken." "[U]nresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). Lieutenant Flanagan's statement was plainly unresponsive, and there is no evidence that the prosecutor knew Lieutenant Flanagan would give the above answer or that he conspired with him to do so. Furthermore, it is not necessary "to reverse a conviction where isolated, improper remarks did not cause a miscarriage of justice." *People v Seals*, 285 Mich App 1, 24; 776 NW2d 314 (2009).

We also reject defendant's claim that the prosecutor elicited irrelevant and misleading testimony while he questioned Officer Wright, Ms. Green, and Ms. Mitchell. To support his argument, defendant simply includes a list of unidentified transcript pages with references to what he describes as "prosecutor leading," "prosecutor hearsay," "prosecutor redundant practice," and "prosecutor misleading." Defendant includes no argument or applicable legal authority to

>       explain how these citations amount to prosecutorial misconduct. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005). In any case, the judge instructed the jury that the attorneys' statements and questions are not evidence, and "curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich App at 21.

Michigan Court of Appeals decision, docket #27 at 6-7.

Petitioner has failed to show how his rights were violated or that any prejudice resulted from these alleged errors. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989).

The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due

process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In the opinion of the undersigned Petitioner fails to show prosecutorial misconduct occurred during his trial. Moreover, as previously explained, the evidence against Petitioner was sufficient to support his convictions. Most importantly, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: September 9, 2015                             /s/ TIMOTHY P. GREELEY
                                                     TIMOTHY P. GREELEY
                                                     UNITED STATES MAGISTRATE JUDGE